IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TOLEDA TRAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 11 C 6080 |
| COOK-DUPAGE TRANSPORTATION, | ) | |
| | ) | Judge Virginia M. Kendall |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Toleda Travis brings this suit against her former employer, the Cook-DuPage Transportation Company ("CDT"), for discrimination based on sex due to pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., (Count I) ("Title VII"), retaliation in violation of Title VII (Count II), and violations of the Americans With Disabilities Act, 42 U.S.C. § 12102, et seq., (Count III) ("ADA"). CDT moves to dismiss Counts II and III of Travis's Amended Complaint, arguing that the claims fall outside those for which he received his right-to-sue letter, or reasonably related to, the claims made in Travis's Charge submitted to the Equal Employment Opportunity Commission ("EEOC"), and regardless they fail to state a claim.

**I. Background**

The following facts are drawn from Travis's Amended Complaint. Their veracity is assumed for the purpose of deciding this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir.1995).

Travis began working as a driver for CDT in January of 2004. CDT provides car and van

1

transportation to disabled people. Travis was hired as a driver of both cars and vans. Drivers who drive van shifts must be capable of performing the physical labor of helping wheelchair-bound passenger on and off the vans. Drivers of car shifts do not have to perform this added physical labor.

In or around August 2007, Travis informed CDT that she was pregnant. She also informed CDT that her physician had diagnosed her as a high-risk pregnancy, due in part to her age, and that her physician had recommended that she avoid all undue physical exertion, including the physical exertion associated with helping wheelchair-bound passengers board and disembark vans. Accordingly, Travis sought accommodation from CDT to work only car shifts. CDT refused many of Travis's requests for accommodation, telling Travis that she would have to work a van shift or no shift at all. As a result, CDT frequently sent Travis home without giving her a shift.

In March 2008, Travis took maternity leave and then gave birth. During her leave Travis filed a Charge with the EEOC complaining of the alleged discrimination she suffered. After her maternity leave ended, Travis returned to work. In September 2008, Travis suffered an accident while on the job when another driver rear-ended the vehicle she was driving. As a result of the accident Travis suffered a back injury. Travis's physician diagnosed her with a cervical, thoracic and lumbar strain and advised her to avoid all undue physical activity, including the physical exertion associated with helping wheelchair-bound passengers board and disembark vans. Accordingly, Travis sought accommodation from CDT to work only car shifts. At first, CDT acceded to Travis's request for accommodation but then reversed course and refused many of her requests. CDT told Travis that she would have to work a van shift or no shift at all. CDT also urged Travis to take Vicodin. Travis refused because she was breast-feeding. CDT also urged Travis to take Family Medical Leave Act leave rather than accommodate her requests. Travis also refused this

suggestion. As a result, CDT frequently sent Travis home without giving her a shift.

Some time in 2009, CDT began requiring that its drivers each possess a commercial driver's license, which Travis did not possess. Travis, like all CDT drivers who did not possess a commercial driver's license, was instructed to obtain one. According to the procedures then in place, an applicant could take the exam to obtain a commercial driver's license three times before being required to wait six to 12 months before taking the exam again. As of October 2009, Travis had taken the exam twice unsuccessfully. CDT therefore terminated Travis's employment for failing to obtain a commercial driver's license.

On April 1, 2011, the EEOC issued Travis a Dismissal and Notice of Right to Sue by certified mail. The Postal Service returned the April 1, 2011, Right to Sue letter because it was unclaimed. The EEOC sent Travis another copy of the Dismissal and Notice of Right to Sue via regular mail on June 3, 2011. On August 31, 2011, Travis filed a *pro se* Complaint in this Court. The Court then granted Travis's Motion for the Appointment of Counsel. Travis filed an Amended Complaint on December 20, 2011.

## II. Standard of Review

When considering a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. *See Murphy*, 51 F.3d at 717. To properly state a valid claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true ... 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To determine whether

a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. If the factual allegations are well-pleaded, the Court assumes their veracity and then proceeds to determine whether they plausibly give rise to an entitlement to relief. *Id.* A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 1949.

**III. Discussion**

In order to bring a civil action alleging a violation of Title VII or of the ADA, a plaintiff must exhaust her administrative remedies with the EEOC. *See* 42 U.S.C. § 2000e-5(e); *Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006). Accordingly, a plaintiff must first present her claims of discrimination to the agency before she may litigate them in federal court. *See Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005)*; Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 763 (7th Cir. 2001). In Illinois, a plaintiff bringing a Title VII charge must file it with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Likewise, because the ADA's enforcement provision incorporates those of Title VII, 42 U.S.C. § 2000e-5, a plaintiff pursuing a charge under the ADA has three hundred days from the time of the allegedly unlawful act in which to bring a timely charge to the EEOC. *See* 42 U.S.C. § 12117(a); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). Furthermore, before a plaintiff may file suit in federal court under Title VII or the ADA she must receive a right to sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1) (Title VII); 42 U.S.C. § 12117(a), *incorporating* 42 U.S.C. § 2000e-5(f)(1) (ADA); *Gorence*, 242 F.3d at 763. A plaintiff then has 90 days after the receipt of a right to sue letter to commence a civil action in the district court. *See Id.* All of these statutory requirements must be satisfied as preconditions to bringing suit; failure to do

so is grounds for dismissal. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982).

The scope of a civil action brought after a charge is submitted to the EEOC is circumscribed by the nature of the charges filed. *See Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir. 1992). Therefore, the general rule is that a plaintiff may not bring claims into subsequent judicial proceedings that were not within the scope of the earlier EEOC charge. *See Sitar v. Indiana Department of Transportation*, 344 F.3d 720, 726 (7th Cir. 2003). This limitation on a plaintiff's right to recover serves the dual purpose of promoting primary jurisdiction in the agency and notice to the employer. Notwithstanding the general rule that a plaintiff may only bring a claim in court that was included in her original EEOC charge, "because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Claims that are "like or reasonably related" to charges made with the EEOC and which may reasonably be expected to follow an EEOC investigation of those charges are within the scope of the charges filed with the EEOC and therefore can be alleged in subsequent judicial proceedings. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976); *see also Sitar*, 344 F.3d at 726.

For a claim to be 'like or reasonably related' to a prior EEOC charge, the allegations must have a "factual relationship," which means that they "must, at a minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek*, 31 F.3d at 500 (emphasis in original). Claims are reasonably related when they are "so related and intertwined in time, people, and substance that to ignore the relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act." *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th

5

Cir.1993). "When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek*, 31 F.3d at 503. Whether a claim is reasonably expected to follow an EEOC investigation "requires speculation as to what the EEOC might or might not discover in the course of an investigation." *Cheek*, 31 F.3d at 500. "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Id.*, 31 F.3d at 502.

Here, Travis filed her Charge with the EEOC on March 28, 2008. Travis checked only the box indicating that she allegedly suffered from sex discrimination. She did not check the boxes indicating retaliation or disability discrimination. The Charge states in whole:

> I began my employment with Respondent on January 03, 2005 as a Transporter. During my employment I was subjected to different terms and conditions of employment.
>
> I believe I have been discriminated against because of my sex, female, and pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Travis did not raise a claim of retaliation until she filed her Amended Complaint. She did check the box indicating a claim of discrimination on the basis of disability arising under the ADA on her *pro se* Complaint, but she did not include any other material or information relating to this claim.

Title VII prohibits an employer from discriminating "against any of his employees...because he [or she] has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). In other words, "[a]n employer may not retaliate against an employee who has complained about discrimination or other employment

practices that violate Title VII." *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005). In her Amended Complaint, Travis alleges that she filed her Charge with the EEOC in March 2008. She further alleges that after she filed her Charge she suffered a back injury resulting from a driving accident. She claims that CDT did not accommodate her physical injury by allowing her to drive only car shifts *in retaliation for* her filing a charge with the EEOC. The gravamen of her claim for retaliation is that "CDT subjected Travis to unlawful mistreatment in retaliation for her complaint of unlawful discrimination on the basis of her pregnancy, and for her filing a charge of discrimination with the EEOC, by refusing her requests to work car shifts following her back injury in 2008 and by insisting instead that she work van shifts or else not work at all..." Travis claims that this conduct "caused her mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages."

A plaintiff does not have to allege retaliation in her initial charge with the EEOC if the retaliatory action of the defendant is a result of the plaintiff filing a charge of discrimination with the EEOC in the first place. *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 n.9 (7th Cir. 2010) (citing *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 545 n.2 (7th Cir. 1988)); *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473 (7th Cir. 1996). As the Seventh Circuit has noted:

> It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case - a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII. We are reluctant to erect a needless procedural barrier to the private claimant under Title VII, especially since the

> EEOC relies largely upon the private lawsuit to obtain the goals of Title VII. Intertwined with this practical reason for our holding is a strong policy justification. Eliminating this needless procedural barrier will deter employers from attempting to discourage employees from exercising their rights under Title VII.

*McKenzie*, 92 F.3d at 482 (quoting *Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981)); *Steffen,* 859 F.2d at 545 n.2. And contrary to CDT's argument that Travis was required to amend her EEOC Charge in order to exhaust her administrative remedies, a plaintiff *does not* need to file an amended charge alleging retaliation when the impetus for the alleged retaliation was the filing of the initial charge. *See Horton v. Jackson County Bd. of County Comm'rs*, 343 F.3d 897, 898 (7th Cir. 2003); *Gawley v. Ind. Univ.*, 276 F.3d 301, 314 n. 8 (7th Cir. 2001).

Here, Travis has sufficiently alleged a plausible claim that CDT retaliated against her as a result of her bringing a Charge of discrimination against it with the EEOC. Her claim for retaliation is narrowly focused on the conduct of CDT after she filed her Charge. She is not pursing a claim of retaliation for CDT's conduct before the filing of her Charge. That would be procedurally barred. CDT's argument that Count II of Travis's Amended Complaint must be dismissed because she is pursing a claim of retaliation for CDT's actions before March 2008 is misplaced. Accordingly, Travis's claim of retaliation alleged in Count II of her Amended Complaint for CDT's alleged retaliatory conduct due to her filing a Charge with the EEOC may proceed. CDT's Motion to Dismiss Count II is denied.

Travis's claims in Count III, that CDT failed to accommodate her disability and discriminated against her on the basis of disability in violation of the ADA, however, presents two separate and distinct legal theories. *See Green v. National Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999) ("As we have stated previously, a failure to accommodate claim is separate and distinct from a claim of

8

discriminatory treatment under the ADA."). Under the ADA it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In addition, "the ADA makes it unlawful for employers to fail to make reasonable accommodations to the known physical or mental disabilities of an otherwise qualified individual with a disability." *Green*, 197 F.3d at 879.

Travis did not allege a claim of discrimination or a claim of failure to accommodate under the ADA in her Charge. Her claims arising under the ADA are not reasonably related to the Charge filed with the EEOC nor would they reasonably follow an EEOC investigation of her Charge. None of the facts that Travis alleges to support Count III have the requisite factual relationship to her EEOC Charge; they do not describe the same conduct. And apart from alleging generally that CDT failed to accommodate her and discriminated against her in violation of the ADA, Travis does not name a single individual who is allegedly responsible for these failures and violations. In addition, it is impossible to conclude that discovery of the claims in Count III would be a likely result of the EEOC's investigation of the Charge. Nothing in the Charge indicates that Travis intended the EEOC to investigate disability accommodations or discrimination. Travis's Charge alleges only that she was discriminated against because of her sex and because of her pregnancy. There is no mention of a refusal to accommodate any disability in her Charge. Likewise, there are no facts alleged in her Charge to support a claim for disability discrimination. Travis did not ever allege that CDT failed to accommodate her disability or discriminated against her in violation of the ADA with the EEOC. Furthermore, Travis alleges that the sole source of her disability was the back injury she sustained

in September 2008. That event occurred after she filed her Charge of discrimination with the EEOC. It was not possible for Travis to file a charge with the EEOC that contained allegations of disability because at the time she filed her Charge she was, by her own admission, not disabled. Therefore, Travis's allegations in Count III are procedurally improper because she failed to exhaust her administrative remedies by not alleging disability discrimination or failure to accommodate under the ADA in her Charge filed with the EEOC, and therefore, Count III must be dismissed.

Count III of Travis's Amended Complaint must be dismissed for the additional reason that, even if her claims were not procedurally barred for failing to allege them in her EEOC Charge, she fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) as construed in *Twombly* and *Iqbal*. *See* Fed. R. Civ. Pro. 8(a)(2); *Twombly*, 550 U.S. 544; *Iqbal*, 129 S.Ct. 1937. Under Rule 8, a plaintiff's complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the..claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotations omitted). A valid complaint under Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. As the Seventh Circuit has explained, "[a]s we understand it, the Court is saying [in *Twombly* and *Iqbal*] that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original).

For a plaintiff to make out a *prima facie* case that her employer violated the ADA by failing to accommodate her disability she must show: "(1) that she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)); 42 U.S.C. § 12112(b)(5)(A). To make out a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that: (1) she has a disability within the meaning of the ADA; (2) she is qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) that she was subject to an adverse employment action due to her disability. *See Dargis v. Sheahan,* 526 F.3d 981, 986 (7th Cir. 2008); *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005); 42 U.S.C. § 12112(a). CDT argues that Travis has not demonstrated that she is disabled within the meaning of that term as it is defined by the ADA. If a plaintiff is not "disabled for the purposes of the statute...then neither [her] discrimination claim nor [her] failure to accommodate claim can proceed, as this is the first element of both claims." *Cassimy v. Bd. of Educ.*, 461 F.3d 932, 935 (7th Cir. 2006) (citing *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 642-43 (7th Cir. 2005)).

To show that a plaintiff is "disabled" as defined by the ADA, the plaintiff must either: (a) have "a physical or mental impairment that substantially limits one or more major life activities..."; (b) have "a record of such impairment; or (c) be "regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). "[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999). The fundamental focus of the statute concerns whether a physical or mental impairment "substantially limits" the "major life activities" of an individual. *See* 42 U.S.C. § 12102(2). "'Major life activities' thus refers to those

activities that are of central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002). The Act defines 'major life activities' as activities such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The term 'substantially limited' refers to the inability to perform a major life activity as compared to the average person in the general population, or a significant restriction 'as to the condition, manner, or duration' under which an individual can perform a particular activity." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 554 (7th Cir. 2011) (quoting 29 C.F.R. § 1630.2(j)). In making the determination of whether a plaintiff is disabled, courts consider "the nature and severity of the impairment, the duration and expected duration of the impairment, and the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii); *see also Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007). "The impairments must substantially limit employment generally, not merely preclude an employee from performing either a particular specialized job or a narrow range of jobs". *Kupstas v. City of Greenwood*, 398 F.3d 609, 613 (7th Cir. 2005). These terms of the ADA are "to be interpreted strictly to create a demanding standard for qualifying as disabled" under the Act. *Toyota*, 534 U.S. at 197. "Not every medical affliction amounts to, or gives rise to, a substantial limitation on a major life activity." *Cassimy*, 461 F.3d at 935.

Travis's only claim that she was disabled is her statement that "[a]s a result of the back injury she suffered, Travis became disabled and CDT knew of this fact." This bare allegation is comprised of the sort of mere labels and conclusions that *Twombly* warns against. *See Twombly*, 550 U.S. at 555. Travis's claim that she is disabled does not establish that she is disabled under the ADA; Travis

12

does not allege that her back injury substantially limited her in performing a major life activity. Furthermore, Travis admits in her Complaint that she was perfectly capable of performing car shifts. Thus, according to Travis's own allegations she was not limited in her ability to perform her job generally, but merely precluded from performing the particular specialized job of van driving. Count III of Travis's Amended Complaint is alternatively dismissed for failing to meet the pleading requirements of Rule 8.

## IV. Conclusion

For the foregoing reasons CDT's Motion to Dismiss is granted in part and denied in part. Count III of Travis's Amended Complaint is dismissed; Count II may proceed.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 16, 2012